**CHARLTON H. FORRESTER, JR.,**

    **Plaintiff,**

**-vs-**               Case No. 6:10-cv-185-Orl-19DAB

**TIMOTHY STANLEY and CITY OF ORLANDO**

    **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Count I of the Plaintiff's Complaint by Defendant Timothy Stanley (Doc. No. 8, filed Feb. 26, 2010); and

2. Response to Defendant Timothy Stanley's Motion to Dismiss Count I by Plaintiff Charlton H. Forrester, Jr. (Doc. No. 15, filed Mar. 12, 2010).

## Background

### I. Plaintiff's Allegations[1]

On November 21, 2008, Plaintiff Charlton H. Forrester, Jr. was allegedly a passenger in a car traveling to a football game in Orlando. (Doc. No. 1 ¶ 8.) Forrester asserts that the car in which he was traveling stopped to assist another car that had sustained a flat tire. (*Id.* ¶ 10.) During the stop, one or more unnamed individuals discharged a firearm into the air, which allegedly prompted

---

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

members of the City of Orlando Police Department, including Officer Timothy Stanley and his police K-9, to the scene. (*Id.* ¶ 13.)

Forrester asserts that the police officers on the scene executed a coordinated enforcement action during which Defendant Stanley and other officers approached the two cars and ordered all persons to lie down on the sidewalk. (*Id.* ¶ 14-16.) Forrester maintains that he complied immediately. (*Id.* ¶ 16.) After the order to lie down was given, Demetrius Patterson allegedly moved from the area around the vehicle with the flat tire to the area near the other vehicle where Patterson eventually lay down on the sidewalk. (*Id.* ¶¶ 17, 21.)

Forrester asserts that at the time Patterson was in the process of lying down on the sidewalk or commencing to lie down on the sidewalk, Officer Stanley deployed his K-9 with orders to "bite" or "apprehend." (*Id.* ¶¶ 22-23.) Forrester further maintains that Stanley deployed the K-9 knowing that "numerous" individuals were lying on the sidewalk,[2] that the K-9 was a dangerous and vicious animal, that the K-9 was unable to differentiate between potential targets, and that the K-9 would "bite" or "apprehend" the first available target. (*Id.* ¶¶ 19-21.) The K-9 allegedly attacked Forrester as he lay prone on the sidewalk which resulted in physical injuries to Forrester. (*Id.* ¶¶ 24-25, 28-29.)

**II. Procedural History**

On February 1, 2010, Forrester filed a three-count Complaint against Stanley and the City of Orlando, alleging: (1) a claim under 42 U.S.C. § 1983 against Stanley; (2) negligence against the City of Orlando; and (3) negligence against Stanley. (Doc. No. 1.) On February 26, 2010, Stanley

---

It is unclear from the factual allegations in the Complaint how many persons were lying on the sidewalk at the time the K-9 was allegedly deployed.

moved to dismiss Count I of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 8.) On March 12, 2010, Forrester filed a response in opposition. (Doc. No. 15.)

**Standard of Review**

**I. Motion to Dismiss**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I. Violation of a Constitutional Right**

Stanley asserts that Count I of the Complaint should be dismissed because Forrester was not deprived of a constitutional right under the alleged facts. (Doc. No. 8 at 3-5.) Forrester argues in response that the alleged facts plausibly establish that Stanley violated Forrester's liberty interest to personal security guaranteed by the Fourteenth Amendment right to substantive due process.[3] (Doc. No. 15 at 8-10.)

A public official is liable under Section 1983 if he causes the plaintiff to be deprived of his constitutional rights. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or

---

[3] Forrester concedes that his Section 1983 claim in Count I does not concern the use of excessive force in violation of the Fourth Amendment. (*See* Doc. No. 15 at 8 ("The complaint does not allege that Stanley *intentionally* caused his K-9 to apprehend Forrester. Thus, this is not a Fourth Amendment use-of-force claim.") (emphasis in original).) Thus, the Court will not discuss whether the Section 1983 claim in Count I plausibly establishes a Fourth Amendment violation.

property, without due process of law." As recognized by the United States Supreme Court in *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989), "in certain limited circumstances the [Due Process Clause] imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. The Court found two areas where a "special relationship" imposing a due process duty to protect may be created: (1) custodial settings in which the state has limited the individual's ability to care for himself; and (2) when the state affirmatively places the individual in a position of danger the individual would not have otherwise faced. *Id.* at 199-202.

Forrester asserts that a "special relationship" was created when the police ordered him to lie down on the ground, thereby placing Forrester in custody and depriving Forrester of the ability to protect himself. (Doc. No. 15 at 10.) Forrester correctly asserts that by lying down prone on the sidewalk pursuant to police orders, he was "seized" under the Fourth Amendment at the time of the K-9 attack. (Doc. No. 15 at 9); *see United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (noting that a person is seized under the Fourth Amendment "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). However, it is not clear that a state actor has an affirmative duty to protect a person from physical harm under the Fourteenth Amendment merely because that person is "seized" as defined in the Fourth Amendment. *See White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) ("[T]he only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of

themselves.") As noted by the Seventh Circuit Court of Appeals, the Supreme Court's express rationale in *DeShaney* does not support the conclusion that a criminal arrest, let alone a seizure not amounting to an arrest, constitutes "custody" for which the Fourteenth Amendment duty to protect arises:

> The Supreme Court's express rationale in *DeShaney* for recognizing a constitutional duty does not match the circumstances of a simple criminal arrest: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, 489 U.S. at 200. . . . This rationale on its face requires more than a person riding in the back seat of an unlocked police car for a few minutes.

*Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1175 (7th Cir. 1997); *see also Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (noting that the Fourteenth Amendment analysis does not begin until "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time") (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)). In any case, even if the seizure of Forrester under the alleged facts placed him in "custody" such that Stanley owed Forrester a duty of protection under the Fourteenth Amendment, this claim should be dismissed because, as discussed below, Stanley is entitled to qualified immunity.

## II. Qualified Immunity

Stanley maintains that Count I of the Complaint should be dismissed because he is entitled to qualified immunity. (Doc. No. 8 at 5-8.) Forrester argues in response that Stanley violated Forrester's clearly established rights under the Fourteenth Amendment by allegedly deploying the

K-9 to attack while Forrester lay prone on the ground pursuant to police orders. (Doc. No. 15 at 10-12.)

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, the government official must first show that he acted within the scope of his or her discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To act within the scope of discretionary authority means that the actions were: (1) undertaken pursuant to the performance of the official's duties; and (2) within the scope of the official's authority. *Collier v. Dickinson*, 477 F.3d 1306, 1308 n.1 (11th Cir. 2007). Plaintiff alleges that Stanley, a City of Orlando police officer, deployed his K-9 for the purpose of apprehending a person, (Doc. No. 1 ¶¶ 13, 18, 22), and thus Stanley was plausibly acting within the scope of his discretionary authority. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (finding that a police officer's attempted apprehension of a suspect was within the officer's discretionary authority).

If the alleged action was taken within the scope of discretionary authority, the Court then determines whether: (1) the facts alleged by the plaintiff make out the violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009). The Court may consider these two factors in either order. *Id.* at 818.

In order to determine whether a right is clearly established, this Court may look only to the precedent of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit,

and the Florida Supreme Court. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). In addition, any caselaw used to show that a government official has violated a clearly established right must "pre-date the officer's alleged improper conduct, involve materially similar facts, and 'truly compel' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998).

Stanley is entitled to qualified immunity here because there is no clearly established law that his alleged actions violated Forrester's Fourteenth Amendment right to protection from physical harm while in state custody. Forrester cites *H.A.L. ex. rel. Lewis v. Foltz*, 551 F.3d 1227 (11th Cir. 2008), to draw an analogy between a state's violation of a foster child's due process right to protection by placing that child in a home with a known sexually aggressive child and Stanley's alleged violation of Forrester's due process rights by deploying a K-9 to attack on a sidewalk crowded with detainees. (Doc. No. 15 at 11.) Because the Eleventh Circuit's opinion in *Foltz* was entered on December 15, 2008, *Foltz*, 551 F.3d at 1227, Forrester cannot rely on *Foltz* to clearly establish the violation of a right during the alleged K-9 attack on November 21, 2008. (Doc. No. 1 ¶ 8.) In addition, Forrester cannot rely on *Foltz* to show that Stanley violated clearly established law because facts in *Foltz* are not materially similar to the alleged K-9 attack.

Forrester also relies on *Lynch v. United States*, 189 F.2d 476 (5th Cir. 1951), in which the Fifth Circuit held that by turning arrested persons over to the Ku Klux Klan for "trial by ordeal," several police officers violated the arrested persons's due process right to a trial by jury. *Id.* at 479. Unlike the plaintiffs in *Lynch*, who were arrested and taken by the police to third persons for the purpose of imposing physical harm, *id.* at 478, Forrester does not allege that he had been placed under arrest, and Forrester does not allege that Stanley intended Forrester to be attacked or otherwise

harmed by the K-9. (Doc. No. 1 ¶ 22.) Further, the court in *Lynch* held that the police officers' conduct violated the due process right to trial by jury, not the due process right to protection from physical harm while in state custody. *Lynch*, 189 F.2d at 479. Because the facts in *Lynch* are not materially similar to the allegations here and because *Lynch* concerns a different right guaranteed by the Fourteenth Amendment, *Lynch* does not clearly establish that Stanley violated Forrester's right to protection from physical harm while in state custody.

Forrester further cites *Helling v. McKinney*, 509 U.S. 25 (1993), in which the Supreme Court held that a prison inmate stated a claim under the Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to his future health. *Id.* at 35. Although "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments," *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001), Forrester may not rely on *Helling* to clearly establish a right to protection from physical harm here because *Helling* only concerned whether the plaintiff stated a claim, not whether he had a right to be free from tobacco smoke as alleged. *Id.* at 35-36. Further, the ultimate issue in *Helling*, whether smoke posed an unreasonable risk of serious damage to an incarcerated person's future health, involved facts that are materially dissimilar from the alleged K-9 deployment during a roadside detention. *Id.* at 35. Thus, Forrester cannot rely on *Helling* to clearly establish that Stanley violated Forrester's right to protection from physical harm while in state custody.

Although Forrester relies solely on the existence of a "special relationship" to establish a violation of his Fourteenth Amendment rights, a state agent may violate a person's right to substantive due process in the absence of a "special relationship" through conduct that is "arbitrary,

or conscience shocking, in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *White*, 183 F.3d at 1258; *see also Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (finding that a jailor's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it shocks the conscience). The use of force does not shock the conscience if it is applied "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, if the force is applied "maliciously and sadistically to cause harm," then it is conscious shocking and thus excessive under the Fourteenth Amendment. *Id.*; *Danley*, 540 F.3d at 1306.

Applying this standard to Forrester's allegations, the Court cannot plausibly infer from the alleged facts that Stanley deployed the K-9 in a malicious or sadistic manner. In addition, the Court has found no case standing for the proposition that deployment of a K-9 under facts materially similar to the allegations here is arbitrary or conscience shocking.[4]

In summary, Forrester does not cite, and the Court has not found, any caselaw clearly establishing that Forrester's Fourteenth Amendment right to protection from physical harm while in state custody was violated under the alleged facts. Accordingly, Stanley is entitled to qualified immunity, and Count I should be dismissed.

---

[4] In *Fennell v. Gilstrap*, 559 F.3d 1212 (9th Cir. 2009), the Eleventh Circuit addressed whether a pretrial detainee's Fourteenth Amendment rights were violated where a police officer kicked the pretrial detainee in the face during a struggle to secure the detainee at a jail shortly after an arrest. *Id.* at 1215. Because this case was decided after the alleged K-9 attack on November 21, 2008, it cannot be used to clearly establish that Stanley violated Forrester's Fourteenth Amendment rights. (Doc. No. 1 ¶ 8.) In addition, the facts in *Fennell* are not materially similar to the alleged K-9 attack on Forrester.

**III. Retaining Jurisdiction Over Remaining State-Law Claims**

Forrester asserts claims for negligence against the City of Orlando and Stanley in Counts II and III, respectively. (Doc. No. 1 at 7-10.) This Court has supplemental jurisdiction over these state-law claims if the court has original jurisdiction over the Section 1983 claim in Count I and if the state law claims for negligence arise out of the same nucleus of operative facts as the Section 1983 claim. 28 U.S.C. § 1367(a) (2010); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). As discussed above, the Section 1983 claim in Count I should be dismissed for failure to state a claim upon which relief can be granted. Accordingly, this Court must decide whether it will continue to exercise supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. § 1367(c)(3) (2010) (authorizing a district court to decline adjudication of lingering state-law claims after it has dismissed "all claims over which it has original jurisdiction").

"In deciding whether or not to retain jurisdiction on such an occasion, the trial court must take into account concerns of comity, judicial economy, convenience, and fairness." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996). Of aid in this decision is the Supreme Court's admonition that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (footnotes omitted).

Because this case was recently filed, it would not be unfair to require Forrester to pursue his claims of negligence in state court. *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (noting that any delay to a plaintiff's case is outweighed by the benefit of a state court, rather than a federal court, deciding a state law claim). Considerations of judicial economy also militate against the district court maintaining jurisdiction over two state law claims. *Id.*

Accordingly, Forrester's claims of negligence in Counts II and III should be dismissed, but these claims may be reasserted if a claim arising under this Court's original jurisdiction is properly plead in an Amended Complaint.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss the Plaintiff's Complaint (Doc. No. 8) by Defendant Timothy Stanley is **GRANTED**. Counts I, II, and III of the Complaint are **DISMISSED without prejudice**.

Plaintiff has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order. Failure to comply with this Order may result in dismissal of the case without prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 28, 2010.

*[signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record